IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**EARLINE MARIE YARBOR**                                            **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO. 4:23-CV- 219-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                          **DEFENDANT**

## MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of the final decision by the Commissioner of the Social Security Administration denying her application for Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal directly to the Fifth Circuit Court of Appeals. The court, having reviewed the administrative record, the briefs of the parties, the applicable law and having heard and considered oral argument, finds the decision of the Commissioner of Social Security should be affirmed.

## FACTS

The plaintiff, Earline Yarbor, filed for SSI benefits on August 3, 2021. The Social Security Administration denied the claim initially and on reconsideration. Following the hearing, the ALJ issued an unfavorable decision on June 28, 2023. (Dkt. 5 p. 14-26).[1] The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] All references are to the administrative record using the court's numbering system, rather than the administrative numbering.

The ALJ found Yarbor had the following severe impairments: major depressive disorder and mild degenerative disc disease. The ALJ found she had the residual functional capacity (RFC) to perform medium work. She can lift, carry, push and pull no more than fifty pounds occasionally and twenty-five pounds frequently. She can stand and/or walk for six hours per workday and sit for six hours a day. She can understand, remember and carry out short simple instructions; make simple work-related decisions; tolerate occasional interaction with others; and adapt to occasional changes in a routine work setting. R. 19.

The ALJ found Yarbor can perform her past relevant work as a fish cutter. The claimant was fifty-one years old and is an individual closely approaching advanced age as of the date of application. She has a marginal education. In addition to her past relevant work, the ALJ found, based on the testimony of the vocational expert, that Yarbor could also do other jobs that exist in substantial numbers in the national economy, namely, laundry worker, which is unskilled work performed at the medium level of exertion (40,000 jobs); industrial cleaner, unskilled medium exertion work (36,000 jobs); and agricultural produce packer, which is medium, unskilled work (15,000 jobs). The ALJ, therefore, determined that Yarbor was not disabled.

## ANALYSIS

The plaintiff in this appeal argues the ALJ erred in her assessment of the medical opinions in this case. She argues the ALJ failed to consider all the medical evidence in the record, but rather picked and chose only the evidence that supported her decision to deny benefits, citing *Loza v. Apfel*, 219 F.2d 378 (5th Cir. 2000). She also specifically faults the ALJ, arguing she failed to consider the medical source statement of Dr. J. Morris Alexander, Ph.D., a consultative examiner, in which he assessed Yarbor's ability to perform work related

2

activities. Exhibit B14F. R. 427-429. Alexander's findings on work capacity would virtually assure an award of benefits if accepted because, among other things, he stated Yarbor would have poor ability to relate to co-workers and deal with the public and a poor ability to behave in an emotionally stable manner or demonstrate reliability. R. 427-429. Alexander prepared two reports, both in Exhibit B14F. R. 430-437. The ALJ never expressly addressed the medical source statement's work restrictions, leading the plaintiff to argue that the restrictions were not considered.

The government argues that the ALJ was not required to specifically address every element of Alexander's opinions and therefore the failure to specifically address one of the two Alexander reports is not error. The government also argues the ALJ properly supported her finding that Alexander's opinions were not persuasive with an appropriate discussion of consistency and supportability.

**1. Standard of review**

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g.); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The substantial evidence standard requires only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has held that " 'no substantial evidence' can only be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical

3

evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Perales*, 402 U.S. at 390.

**2. The ALJ's Decision**

In this case, as the ALJ wrote she was confronted with dramatically different, sharply contrasting evidence and opinions relating to the plaintiff's mental residual functional capacity. She offered a variety of reasons for her treatment of the medical opinions and the ultimate decision to deny benefits.

As already noted, Alexander submitted two reports to the Social Security Administration. One is titled "Comprehensive Mental Status Evaluation and Psychological Evaluation." (Hereafter Comprehensive Report) R-430-434. The ALJ discussed this report in detail in the decision but found it to be unpersuasive. Alexander also submitted a "Medical Assessment of Ability to Do Work Related Activities,). (Hereafter Work Report). R. 427-29. This second report was not mentioned in the decision.

The ALJ discussed Alexander's comprehensive report in detail, making it clear she understood Alexander was reporting his findings and opinions that Yarbor was unable to work. The ALJ's decision noted the following from Alexander's report:

4

> [T]he claimant underwent another psychological consultative examination, performed by J. Morris Alexander, Ph.D., licensed clinical psychologist on April 12, 2023. The claimant reported she was fired from her last job after missing work for two weeks after her son died. At this consultative examination visit, she reported she could drive but stopped driving about five years earlier. She was roughly oriented, had fair eye contact, speech was rapid/verbose/rambling/tangential, affect was mostly histrionic and labile, reported seeing UFOs, feels as if someone watches her, cried easily, reported sometimes worrying and shaking, talked to herself, appeared nervous with jerky movements, pace of work was slow, tasks approached haphazardly, was slow to comprehend instructions, struggled with subtests, and could not read. A full-scale IQ was not reported due to lack of data and academic testing showed her performing at less than kindergarten level in math computation and word reading and below first grade level in sentence comprehension. Her diagnoses were depression-likely histrionic and or borderline personality disorder. She was not diagnosed with an intellectual disability.
> (Exhibit B14F). R. 21-22.

The ALJ also noted Alexander thought Yarbor could not independently manage her finances; and that she "*appears poorly suited to perform routine repetitive tasks*." R. 23. (emphasis added). The comprehensive report also indicated Yarbor sucked her thumb. While she was receiving outpatient treatment at Life Help, she had not required any psychiatric hospitalizations. R. 431.

In his work report, consistent with the comprehensive report, Alexander rated Yarbor as having poor skills in most areas of work including the ability relate to coworkers, deal with the public, use judgment, function independently, maintain attention and concentration, and understand and carry out detailed but not complex instructions. The doctor also found that she would have poor ability to behave in an emotionally stable manner and relate predictably in social situations or to demonstrate reliability. However, Alexander found that she would have fair ability to follow work rules, interact with supervisors, follow simple job instructions, and maintain her personal appearance. R. 427-429.

In contrast, Yarbor's treating mental health provider, Tammy Pernell, CMHT, in her mental work capacity statement found that Yarbor had good ability to remember work-like procedures; understand, remember, and carry out short and simple instructions; maintain attention for two hours segments; sustain an ordinary work routine without special supervision; work in coordination with or in proximity to others without being unduly distracted; make simple work-related decisions; complete a work day and work week without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers and peers, and respond appropriately to routine changes in the work setting. She also found that the claimant had good ability to maintain her personal appearance; behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability. She predicted Yarbor would only miss one day of work per month. R. 23.

Further demonstrating the stark differences in the opinion evidence, the ALJ addressed the findings by Dr. Marjorie McCoy, another consultative examiner, whose findings and limitations were largely consistent with Alexander's report. McCoy found the plaintiff made poor eye contact and claimed to lack some basic skills like using an alarm clock or filling out an employment application. Yarbor responded to questions only after repetition. Her speech was characterized as stuttering and impoverished, and her thought processes were tangential. McCoy found she had limited memory, poor attention and concentration and was unable to do even simple mathematics. In this doctor's opinion, Yarbor had a poor fund of information and limited comprehension and understanding and was below average in intelligence. R. 19. Exh BF16.

6

The state agency mental health consultants reviewed the treatment records and McCoy's reports, before issuing their own findings. They did not include the work-preclusive restrictions found in McCoy's and Alexander's reports.

The ALJ's decision included a summary of every visit to Life Help and some mental health findings by her primary care provider. The May 11, 2022, notes from her primary care provider scored her as having mild depression, but on July 8, 2022, the screening for depression was negative. Her memory was normal, her mood appropriate, and her insight and judgment normal. She was oriented to time, place, person, and situation period. Her August 18, 2022 mental status examination showed Yarbor had normal thought processes, concentration, attention span, memory, abstract reasoning, judgment and insight. She was showing no impairment in orientation at that time, and her general fund of knowledge appeared to be good. Her intelligence level was estimated to be in the average range. No hallucinations, suicidal or homicidal ideations were reported. R. 17. The August 18, 2022 visit notes showed her mood was depressed, her affect flat, and that she suffered from low self-esteem, but her appearance and motor activity levels were normal. R 17.

At her September, 2022, visit, Yarbor had a cooperative attitude, normal eye contact and her mood was euthymic. She was showing poor abstract reasoning, and complained of decreased sleep at that visit. Her appearance, motor activity, speech, thought content, thought processes, perception, affect, orientation, concentration, attention span, memory, and appetite were all normal. Her estimated intelligence was in the average range.

At her October 2022 visit, Yarbor reported that "I feel lovely" and that the medication was helping her, but she also reported she was very tearful, and had occasional bad dreams, but, she declined therapy. Her mood was noted as being depressed but her affect was

normal. She again reported decreased sleep. The remainder of the examination was normal. R. 18.

At the visit on November 20, 2022, the patient health questionnaire indicated only mild depression. On examination her memory was noted to be normal. She was oriented to time, place, person, and situation. Her mood was appropriate and her affect, insight and judgment all normal. R. 18.

On February 23, 2023, her mental status examination showed a cooperative attitude, appropriate eye contact, depressed mood, blunted affect, decreased sleep and appetite. She was estimated to be of average intelligence. Normal appearance, and normal findings in speech, motor activity, thought content, thought processes, concentration, attention span, memory, abstract reasoning, judgment, and insight, are noted at this visit. R. 18.

### 4. The Explanation

Facing fairly inconsistent opinions, the ALJ had to choose which opinions she found persuasive and which she did not. The judge explained the choices made as follows.

In addressing Alexander's opinion, the ALJ noted "the claimant's presentation at treatment provider is vastly different from that at consultative examinations." R. 18. The ALJ also mentioned that Yarbor's wage records showed substantial gainful activity for 2019 and parts of 2018 and 2020. The ALJ mentions Yarbor had never needed inpatient hospitalization for her depression. R. 22. The ALJ explained she was giving more weight to the treating providers examinations and opinions as "they have seen the claimant four times and each consultative examination saw her only once." The ALJ noted the consistency between the mental health treatment records and the mental status examinations in the treatment records of her primary care providers' psychological exams. R. 22. She also noted

8

that the mental status exams by the treating provider were "largely consistent from visit to visit." R. 23.

The ALJ also explained why she found the opinions of the Life Help provider and the state agency doctors' opinions persuasive. The judge found their opinions persuasive, in part, because they were "consistent with the claimant's initial behavioral observations in August 2022, that showed normal thought processes, appropriate thought content, and normal concentration, attention span, memory, abstract reasoning, and judgment/insight and average intelligence and normal thought content, thought processes, concentration, attention span, memory, judgment, and insight." R. 17. While the treatment records showed Yarbor was depressed, she improved with medication. R. 18. Yarbor had similar mental status examinations in September 2022, October 2022, and February 2023.

The plaintiff argues ALJ cherry picked the record looking only to the evidence that supported her decision to deny benefits, largely ignoring the evidence that would support an award of benefits. A hallmark of improper cherry-picking is when the ALJ's decision presents a skewed, one-sided, and incomplete depiction of the contents of the administrative record. *Loza v. Apfel,* 219 F.3d 378 (5th Cir. 2000); *Moore v. Colvin,* 743 F.3d 118, 1123 (7th Cir. 2014); *Smith v. Colvin*, 2016 WL 762693, at *10 (N.D.Miss. 2016). But where the decision fairly summarizes the evidence on both sides and explains the weight given to conflicting evidence, the ALJ is properly executing the decision-making authority entrusted to the agency. That some evidence was credited, and other evidence rejected is not indicative of improper cherry picking.

While the ALJ did not address all the evidence, the decision fairly represents the content of the administrative record and the dramatic contrast in the opinions of the various

experts. Instead of ignoring conflicting evidence, the ALJ acknowledged and analyzed the evidence and resolved conflicts in the record.

The plaintiff argues the ALJ failed to consider Alexander's work report, but not mentioning that report is not necessarily error under the applicable regulations. The current regulations provide for source-level articulation on the treatment of medical opinions and expressly waives any requirement to address every opinion by every provider. Under 20 C.F.R. § 404.1520 (b) (1) when a

> medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id.*

Therefore, without some additional showing, the failure to discuss the work capacity report is not error.

The court rejects the argument that the ALJ missed the consultative examiner's work report. Both Alexander reports are in the same exhibit, and one immediately follows the other. This does not support a claim that the ALJ was likely to simply miss the work report, particularly given the thoroughness and care demonstrated in the rest of the decision.

10

## **CONCLUSION**

After considering the matter, the court finds that the ALJ did not cherry pick the record, but rather addressed sharply conflicting evidence, resolved the conflicts, and explained her decision. The ALJ's carefully explained decision does not reveal any legal error and is supported by evidence that more than meets the substantial evidence standard applicable to review on appeal.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner is affirmed.

**SO ORDERED** this the 27th day of June, 2024.

/s/ David A. Sanders
U.S. MAGISTRATE JUDGE